388 So.2d 146 (1980)
Donald Eugene BUFORD
v.
JITNEY JUNGLE STORES OF AMERICA, INC.
No. 52105.
Supreme Court of Mississippi.
September 17, 1980.
*147 Mike L. Cordell, Miller, Dean & Cordell, Howard Dyer, III, Greenville, for appellant.
Roy D. Campbell, Jr., Campbell & DeLong, Greenville, for appellee.
Before BROOM, LEE and COFER, JJ.
BROOM, Justice, for the Court:
Personal injury tort action is the nature of this action brought by the plaintiff/appellant, Donald Eugene Buford, against the defendant/appellee Jitney Jungle Stores of America, Inc. in the Circuit Court of Washington County. There a directed verdict was given against the plaintiff when he rested, and now he appeals. The chief issue is whether or not the plaintiff made out a sufficient case of negligence to go to the jury; he contends that he did. We affirm the judgment upon the directed verdict.
From the top (deck) of a large walk-in refrigerator in the Jitney Jungle store in Greenville, Mississippi, at approximately 4:00 a.m. June 7, 1977, the plaintiff fell and suffered serious injuries. At the time, he was a professional electrician of many years experience. In his suit, he alleges that his injuries resulted from the negligence of Jitney Jungle in failing to use reasonable care to provide him with a reasonably safe place to work or in failing to give him any warning of the danger which he alleged existed on top of the refrigerator from which he fell.
The facts are largely undisputed. Jitney Jungle's agent, Bill Bass, acting for Jitney Jungle requested the plaintiff to install a timer device on a compressor situated on top of the walk-in refrigerator which was located outside the Jitney Jungle store. The plaintiff followed Bass up there and, from a squatting position, he stood up. In so doing he apparently caught his heel on or under a pipe causing him to lose his balance and fall over the edge and down to the concrete some ten feet below. No lights or light fixtures were installed or located on top of the refrigeration unit where service work was done from time to time at night. Other facts will be stated as appropriate herein.
Our rule, which is so well established as not to need any authority is that we consider only the evidence offered on behalf of the plaintiff in deciding whether a directed verdict should be given against the plaintiff. If that evidence considered as true along with all reasonable inferences which could be drawn from it favorably to the plaintiff could support a verdict for him, no directed verdict should be allowed. The undisputed facts before us show that plaintiff was a licensed, independent electrical contractor having worked as such for a number of years. On the occasion in question he fell from the top of the refrigeration unit which apparently is about ten feet high and about ten feet wide; testimony concerning the length varies from about eighteen feet to considerably longer. The unit had been installed against the South end of the Jitney Jungle building about 1975, and on top of it a row of six compressors had been installed about two feet back from the outside edge of the unit's deck. When the compressors were installed, the plaintiff worked on them, installing the wiring and running the electrical conduits to them. The conduit pipe coming out of the wall was installed by the plaintiff and it seems to be the pipe upon which he caught his foot resulting in his fall on the occasion in question. Since 1975, plaintiff has been back on top of the unit in daylight. According to him, however, the only previous time he had been there at night was in 1975 on which occasion there were temporary drop lights shining there for use by refrigeration workers.
In this case, both parties agree that the proper rule is as stated in Mississippi Chemical Corp. v. Rogers, 368 So.2d 220, 222 (Miss. 1979):

*148 The owner [or possessor] of a building owes a duty to an independent contractor ... to furnish a reasonably safe place to work or give warning of danger. (Emphasis added).
Jitney Jungle in its brief admits that either the employer must furnish workmen, including an independent contractor such as the plaintiff here, with a reasonably safe place to work or give warning of the danger. Continuing, Jitney Jungle takes the position that:
[T]here is no duty to warn with respect to a fact or situation or condition which is obvious and is as well known to the invitee as to the invitor. Knowledge is notice.
The facts here show that about 3:00 p.m. on the day preceding the injury, plaintiff had been up on the refrigeration unit in question. He had wired a small new compressor which had recently been situated by Jitney Jungle's employee, Bass, about a foot and a half from the edge of the top of the unit in line with the several old compressors previously installed there. After going up there in the afternoon, plaintiff and his son went home but returned to the store in the early part of the night during which time he would work in order not to interfere with the store's operations. Plaintiff admits that when he was up there during the afternoon, he saw the electrical conduits on the floor which he had previously installed, and on this basis, Jitney Jungle argues:
There was no hidden or undisclosed condition concerning which Appellee failed to warn appellant. Appellee was not required to give Appellant warning of what he already knew and what was obvious, i.e., if he were careless, as unfortunately he was, he might fall and be injured.
The plaintiff argues that the position of Jitney Jungle is not well taken because, according to the plaintiff, he had only been there on top of the walk-in refrigeration unit at night one time which was in 1975, and on that occasion he says that the refrigeration men working there had drop cord lights on top of the unit. He further testified that the lights that had been provided by Jitney Jungle on this prior occasion gave "plenty of light to work by" on top of the refrigeration unit. He testified that:
Q. On this night that you got hurt when you were going up there with Mr. Bass, did you know whether or not any lights were up there at that time?
A. Not really. I took it for granted there would be, because his men had been working there earlier, and they had run refrigeration lines downstairs, so I'm sure they had to have lights there.
BY MR. CAMPBELL: Now, if the Court please, we want to object to the witness speculating as to what he believes or he's sure.

BY THE COURT: The objection is sustained. The jury will disregard that last statement. That's pure speculation, unless he knows.
Q. (Mr. Cordell, resuming:) Mr. Buford, when did you find out there was no light up there?
A. When we went up to check and see where the time clock had to go. At this time, there wasn't any light up there to turn those drop cords on.
Q. You found out after you got up there?
A. Right.
Q. All right. What was going to have to be done to install this timer?
A. Well, with no light up there, I would have to go back down and get an extension cord and drop my drop cord, and a drill and some bolts, and a piece of flexible conduit and some wire.
Q. You were going to have to drill something?
A. Right. We were going to have to drill a hole to mount the time clock.
Q. Would you have to have a light to do that?
A. Right.
Q. Mr. Buford, would you describe the floor of this refrigeration unit on the night that you got hurt?

*149 A. Well, of course, I couldn't see it that good that night, but when I was up there the day before, when I wired that compressor in, there was pipes, electrical pipes and copper lines, all running across it up there... .
The plaintiff places much reliance upon Ingalls Shipbuilding Corporation v. McDougald, 228 So.2d 365, 367 (Miss. 1969) where we held that Ingalls' "failure to have the aft deck of the vessel lighted" was sufficient evidence to justify the jury in finding that Ingalls was guilty of negligence. It is true that the present case has similarities to Ingalls which recognizes "the alternative duty of (a) providing a reasonably safe place to work or (b) giving warning." Nevertheless, Ingalls differs substantially from the present case-Ingalls involved a slippery condition (latent or not readily discernible by the naked eye) of the deck created by the existence of a coat of preservative which had been there since the ship was a part of a "mothball" fleet. In Ingalls, inspection of the surface of the deck by a flashlight failed to reveal the slippery condition; there Ingalls had provided a string of lights over the stern of the vessel but failed to have the lights turned on when the accident occurred. Ingalls, as distinguished from the present case, presented a latent or at least not a readily observable condition upon which negligence was based rather than a condition of which the plaintiff had knowledge.
In the present case, the plaintiff in 1975 had worked on top of the refrigeration unit's deck when he wired the old compressors. The testimony of the plaintiff here is clear. On the afternoon before the unfortunate accident, he was upon the deck wiring a new small compressor-during this time he saw the electrical conduits (copper pipes) he had previously worked on. In addition to this, he had been back on the refrigeration deck at other times and had walked across the deck to the breaker box against the South wall of the store.
Careful analysis of the evidence before us shows that the accident in which the plaintiff was injured occurred when he stood up from a squatting position and moved his heel causing it to come in contact with the conduit pipe which he himself had installed across the deck. According to his testimony, he "supposed" he was aware of the conduit on the night when he was injured, but as he stood up, he forgot it was there and moved his right foot against it. Another important aspect of the plaintiff's testimony is that, according to him, as he ascended the ladder that night and as his head reached the level of the deck from which he fell, he could see that there was no light upon the deck other than the flashlight carried by Bass. Obviously at that time in the exercise of reasonable care in his own behalf he could have gone back to his nearby truck and taken therefrom either a flashlight or a drop cord light. He testified that it was routine for him as a professional electrician to carry and have available inside his truck a drop cord light and a flashlight.
In the case before us, plaintiff was as knowledgeable as Jitney Jungle's agent Bass with the conditions on top of the refrigeration deck: the absence of a light and the presence of the small compressor. This record does not present any situation of a hidden, latent, or undisclosed condition concerning which Jitney Jungle failed to warn or point out to the plaintiff. Under the case law as cited, there is no rule in this jurisdiction requiring the owner or possessor of the premises in question to warn an independent professional electrical contractor of that which was already known to him. Similar questions were involved in Mississippi Chemical Corp., supra, at 222, where Justice Sugg in writing for the Court stated:
We also recognize the rule that knowledge of danger by an independent contractor relieves the owner from the duty of warning the independent contractor or his employees. In Jackson Ready-Mix Concrete v. Sexton, 235 So.2d 267, 271 (1970), we said:
Closely related to this exception is the rule that the owner is not liable for death or injury of an independent contractor *150 or one of his employees resulting from dangers which the contractor, as an expert, has known, . .. .
Here the condition or situation which resulted in the plaintiff's unfortunate injuries were items of which he had knowledge. Under those circumstances, Jitney Jungle was not required to warn him of the existing situation which was as well known to the plaintiff as to Bass, Jitney Jungle's agent. No breach of Jitney Jungle's duty is established by the evidence when construed most favorably to the plaintiff, and accordingly the action of the lower court in directing a verdict was correct. No other argument made merits discussion.
AFFIRMED.
SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, LEE, BOWLING and COFER, JJ., concur.
PATTERSON, C.J., takes no part.