I.
Today's appellant presses a problem of the law of users of dangerous products and their duties to the public. A city water department chlorinating a new water line unwittingly released a burst of chlorine gas that struck a contractor's worker and injured him. The trial court imposed an additional duty to warn via jury instructions, but because the worker's supervisor well knew of the dangers of chlorine gas, the City had no further duty to warn. In this context, we may only reverse. *Page 1268 
 II. A.
Henry L. Ball is an adult resident citizen of Florence, Mississippi. At the time in question, Ball was employed by Kay Engineering as an apprentice plumber and had been so employed for approximately two years or more. Ball was the plaintiff below and is the appellee here. At the time of trial, Henry L. Ball was 35 years of age.
The City of Jackson is a municipal corporation organized and existing under the laws of this state. The City of Jackson was the defendant below and is the appellant here.
In December of 1981, Holiday Inn Southwest engaged the services of Kay Engineering to install a fire line and a domestic water line connecting its facilities with the water main in the City's right-of-way located on Highway 80 West in Jackson, Mississippi. By December 9, Kay Engineering had completed the new line. Kay then called the City of Jackson Water Maintenance Department to sterilize the new line, a service the City provides and performs by injecting chlorine gas into water-filled lines and then flushing the lines with more water.
At the time in question, the City had four men on the job. The crew flushed the new line with water for approximately fifteen minutes and then injected chlorine gas. Richard Aldridge, the City's crew foreman, stood near the fire hydrant at the west end line and began to get a free flow of water. Theodore Adams, another city employee, stood at the hydrant on the east end of the line. Kay Engineering's supervisor, Barry S. Stingley, informed the City's crew supervisor, apparently Aldridge, that the line was half empty and that it should be full of water before the chlorine gas was injected.
Shortly before the City began chlorination, Plaintiff Ball and three other Kay Engineering employees arrived. They were standing aside a pickup truck near the fire hydrant Adams stood by. Chlorine gas suddenly burst from the hydrant, apparently because of an air pocket of chlorine in the line. Adams tried to close the valve but inhaled some of the chlorine gas and started gagging. Unable to shut the valve, Adams hollered to Aldridge to let him know what had happened and then told Ball and the three other Kay Engineering employees. Jack Fields, a Kay Engineering plumber, saw the chlorine gas and told Ball and the others to run.
Up to this point, Ball had been unaware of his position of peril. Ball had had no experience with chlorine gas, did not know what it looked like, nor what its dangers were.
Water began to flow from the hydrant and was entering the truck. Plaintiff Ball attempted to move the truck but was overtaken by the chlorine gas and inhaled an unknown quantity of the gas. Ball's eyes started burning, his chest hurting, and he began to cough and gasp for breath. An ambulance took Ball to the Hinds General Hospital where he was treated for fluid on his lungs.
Dr. M.D. Hardy explained the first set of pulmonary function studies performed on Mr. Ball on December 10, 1981, one day after his exposure. The studies found that Ball's forced vital capacity was only 70% of predicted and his total lung capacity was only 76% of predicted. Dr. Hardy said this was important with respect to the fact that there was abnormal lung function. Also, on December 20, 1981, arterial blood gases were drawn on room air without supplemental oxygen. Incident to his care and treatment, Ball incurred doctor bills, hospital bills, and other related charges.
Ball was off work for several days and had to take medication for "two or three months". He continues to experience shortness of breath. Prior to the accident, Ball engaged regularly in athletic activities such as basketball and jogging but has had to discontinue these.
 B.
On August 25, 1982, Henry L. Ball commenced this civil action by filing his complaint in the Circuit Court of the First Judicial District of Hinds County, Mississippi, naming the City of Jackson as defendant. Ball sued in tort and charged the *Page 1269 
City with negligent handling of chlorine gas while sterilizing the new line and failure to warn of the dangers incident thereto. The case languished on the docket but ultimately the Circuit Court called it for trial, and on July 11, 1988, a jury found for Ball and against the City in the sum of $11,515.57. The Court entered judgment upon the verdict.
The City promptly moved for judgment notwithstanding the verdict or, in the alternative, for a new trial. On August 3, 1988, the Circuit Court denied these motions. This appeal has followed.
 III.
The City of Jackson first urges that the Circuit Court erred when it denied the City's motion for judgment notwithstanding the verdict. See Rule 50(b), Miss.R. Civ.P. When an appellant presents such a point, our scope of review is as limited as it is familiar. This Court must
 consider the evidence in the light most favorable to the appellee, giving that party the benefit of all [reasonable] favorable inferences that may be drawn from the evidence. If the facts so considered point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary verdict, [we are] required to reverse and render. On the other hand, if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required.
McMillan v. King, 557 So.2d 519, 522 (Miss. 1990); see alsoGuerdon Industries, Inc. v. Gentry, 531 So.2d 1202, 1205 (Miss. 1988); Stubblefield v. Jesco, Inc., 464 So.2d 47, 54 (Miss. 1984); Paymaster Oil Mill Co. v. Mitchell, 319 So.2d 652, 657 (Miss. 1975), (sometimes hereinafter "the Paymaster Rule").
This standard before us, we turn to the primary rules regulating the conduct of parties such as the City of Jackson. We begin with the premise that chlorine gas is dangerous to persons who encounter it. City Water Department supervisor Richard Aldridge well acknowledged that he knew this. The fact is a matter of common knowledge without Aldridge's admission. SeeErbrich Product Co., Inc. v. Wills, 509 N.E.2d 850, 854-56 ( Ind. App. 1987); Kajiya v. Department of Water Supply, 2 Haw. App. 221,629 P.2d 635, 639 (1981). Our law obliged the City to act with reasonable care in the use of chlorine gas. Cf. Garcia v.Coast Electric Power Association, 493 So.2d 380, 382 (Miss. 1986).
The record is replete with opinion evidence that, when sterilizing a line, a party should have the line filled with water before injecting the chlorine. This is to prevent formation of an air pocket and, indeed, to avoid what appears to have happened in this case. The City argues in its brief that "no one is sure exactly why chlorine gas escaped from the water line," and while this seems so, it is quite possible, if not likely, that an air pocket existed in the line and allowed the gas to accumulate and that, when the city employees put more water in the line, this air pocket was forced out the hydrant at the east end near where Ball was standing. The City knew of the air pocket phenomenon and what to do to avoid creating one.
Having in mind the Paymaster rule, we cannot say on this evidence that no reasonable juror could have found that the City employees were negligent at the time and on the occasion in question. Causation and (the fact of some) damage being essentially conceded, we may only hold that the Circuit Court had no authority to set aside the verdict. That Court acted correctly when it denied the City's motion for judgment notwithstanding the verdict.
 IV.
The City next argues that the Circuit Court erred when it imposed upon the City through its employees a duty to warn Ball of the dangers of chlorine. The Court imposed this duty in the form of Instruction P-D which was given the jury in the following language:
 The Court instructs the jury that if you find from a preponderance of the credible *Page 1270 
evidence in this case that the City of Jackson through its employees were negligent on the occasion complained of by failing to warn Henry Ball that a dangerous chemical, chlorine, would be used in his immediate vicinity and this failure to warn caused or contributed to the injuries and damages sustained by Henry Ball, if any, then your verdict should be for the plaintiffs.
Essentially, the City's argument is that Kay Engineering's supervisor, Barry S. Stingley, knew the City was chlorinating the line and was well aware of the properties and hazards incident to exposure to chlorine gas and that these facts relieved the City of any further duty to warn. The City is correct.
Our controlling legal principles are embedded in an established line of cases. See, e.g., Buford v. Jitney Jungle Stores ofAmerica, Inc., 388 So.2d 146, 148-50 (Miss. 1980); Downs v.Corder, 377 So.2d 603, 605-06 (Miss. 1979); MississippiChemical Corporation v. Rogers, 368 So.2d 220, 222 (Miss. 1979);Spruill v. Yazoo Valley Oil Mill, Inc., 317 So.2d 410, 413 (Miss. 1975); Jackson Ready-Mix Concrete v. Sexton,235 So.2d 267, 269-72 (Miss. 1970); cf. Hathorn v. Hailey, 487 So.2d 1342
(Miss. 1986). We accept without hesitation Ball's argument that the City had a duty to warn of the dangers incident to exposure to chlorine gas. This duty flows from the more general duties our law imposes upon owners or occupiers of premises to warn of latent dangers or defects, and like duties upon users of dangerous instrumentalities and products.
The rule we glean from the cases is that the dangerous product user need give no further warning after the contractor, here Kay Engineering, has actual knowledge of the danger. MississippiChemical Corp. v. Rogers, 368 So.2d at 222 ("knowledge of danger by an independent contractor relieves the owner from the duty of warning the independent contractor or his employees"); Bufordv. Jitney Jungle Stores of America, Inc., 388 So.2d at 149 (same). The sense of the suggestion is that, once the contractor knows of the danger, the City's failure to warn may not be said the proximate cause of contractor's worker's injury.
In today's circumstance, the City's duty required that it give the warning to the contractor's supervisor, and not necessarily each of contractor's workers. As a practical matter, the supervisor knows who his workers are, where they are, and has responsibilities for their work and safety. On the other hand, the City has no ready access to this information, nor control over the workers. Hence, the rule of Mississippi Chemical andBuford that notice to the contractor pretermits recovery by the contractor "or his employees."
Hobart v. Sohio Petroleum Co., 255 F. Supp. 972 (N.D.Miss. 1966), aff'd 376 F.2d 1011 (5th Cir. 1967) reads Mississippi law on the point and says:
 Discharge of the duty to warn may involve a constructive element, by giving the warning to the superiors in employment of the person to whom the duty is owed. Similarly, knowledge of the hazard on the part of the superiors may be reasonably assumed to have been communicated to the employees. See 1 Shearman Redfield Negligence § 26 p. 66.
Hobart, 255 F. Supp. at 975; see also Sprankle v. BowerAmmonia and Chemical Co., 824 F.2d 409, 412 (5th Cir. 1987);Gordon v. Niagara Mach. Tool Works, 574 F.2d 1182, 1184 
app. (5th Cir. 1978).
Applying all of this to our facts, we recall that Ball was not personally aware of his position of peril on the morning of December 9, 1981. On the other hand, the City Water Department supervisor Richard Aldridge knew well the dangers of chlorine, and there is no suggestion in this record that he advised Stingley or anyone else with Kay Engineering of those dangers.
We focus then upon Stingley's independent knowledge. Stingley knew how to sterilize water lines and had been given special training therein. He acknowledged he was aware that the City Water Department was going to chlorinate the new line Kay Engineering had installed. While on *Page 1271 
the scene, Stingley discussed the matter with unnamed city representatives, but apparently including Aldridge, and
 I informed them that the water line was not full and I asked them, I said, "Shouldn't the line be full of water before the chlorination gas is put in?"
Stingley then explained the reason why the line should be full of water and that he understood the air pocket phenomenon and the danger it posed.
Stingley at no point states expressly his awareness of the specific dangers posed by exposure to chlorine gas, but he knew of the danger in general and of the hazard in particular. Of this there is no doubt. In the end, Stingley deferred to Aldridge and the City employees, stating
 So I figured if he knew what he was doing there was no need in me standing there trying to tell him something.
Slanting the facts as required by the Paymaster Rule respecting our scope of review, we may only find Stingley aware of the dangerous circumstances on the morning of December 9, 1981. Nothing in the record suggests the contrary. Under the primary rules of obligation emanating from Mississippi Chemical
and the other cases cited, his awareness was adequate to acquit the City of Jackson of any failure to warn Kay Engineering's employees. Knowledge on the part of Kay Engineering's supervisor was sufficient unto the day.
Anderson v. Hensley-Schmidt, Inc., 530 So.2d 181 (Miss. 1988) is not to the contrary. Anderson held a worker not chargeable with the negligence of his supervisor who directed erection of a utility pole before a high voltage line was covered. There is no question of Kay Engineering's duty regarding Ball's safety while on the job, a duty enforceable without regard to Stingley's negligence under the Mississippi Workers' Compensation Act. Miss. Code Ann. § 71-3-7 (1972). The City does not contend Stingley's negligence in failing to warn Ball of the dangers is imputable to Ball such that Ball's recovery should be reduced. Because we credit the City's view that on these facts it had no further duty, we never reach the Anderson question.
The Circuit Court erred when it submitted instruction P-D to the jury.
We have considered whether this error requires reversal. The Court submitted the case to the jury on two theories: negligent chlorination and failure to warn. The record is such that we may only speculate which the jury credited. Because nothing before us allows that we exclude the failure to warn theory as the explanation for the verdict, we must reverse.
 V.
The City of Jackson assigns two further errors, neither of which possesses merit and neither of which requires discussion.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.