445 So.2d 832 (1984)
DIAMOND INTERNATIONAL CORPORATION, et al.
v.
Hazel O. MAY, Administratrix of Estate of Robert T. May, Deceased.
No. 54086.
Supreme Court of Mississippi.
February 15, 1984.
*833 Joseph L. McCoy, McCoy, Wilkins, Noblin & Anderson, Jackson, for appellant.
Lucien C. Gwin, Jr., Handy, Fitzpatrick, Gwin & Lewis, Natchez, Gary K. Jones, John M. Roach, Daniel, Coker, Horton & Bell, Jackson, for appellees.
Thomas M. Murphree, Jr., Watkins & Eager, Jackson, for cross-appellee Case Power & Equipment Co.
Before WALKER, P.J., and ROY NOBLE LEE and BOWLING, JJ.
ROY NOBLE LEE, Justice, for the Court:
Robert T. May filed suit in the Circuit Court of Adams County, Honorable Edwin E. Benoist, presiding, against Diamond International Corporation (Diamond) and Case Power & Equipment Company (Case) for personal injuries sustained by him. The lower court entered a directed verdict in favor of Case and, upon a jury verdict for May,[1] entered judgment for him against Diamond in the sum of $120,000. Diamond has appealed from the judgment against it and May has cross-appealed from the judgment in favor of Case.
Diamond has assigned eleven errors in the trial below. We address only the assignment that the court erred in overruling the request of the appellant, Diamond, for a peremptory instruction and reverse and render judgment here in favor of Diamond. We also affirm the judgment in favor of Case on cross-appeal.
The appellee's case is founded principally upon the testimony of Robert T. May given in a discovery deposition prior to his death. May was a heavy equipment operator, fifty-nine years of age, who was employed by the J.W. Christian Construction Company. His duties with that company were operating bulldozers, motor graders and backhoes. He was a skilled operator with approximately thirty (30) years' experience with heavy machinery. About 10:30 p.m. on May 22, 1975, May received a telephone call at his home from J.W. Christian, who told him to come out to the plant, load up a Case backhoe, take it to Diamond and stay there until the job for which he was needed was completed, regardless of how long it required. He went to the Christian yard, loaded a Case backhoe on the trailer and took it to the Diamond plant, arriving there about 11 or 11:30 p.m. May said that J.W. Christian had instructed him to take the machine to Diamond and to do anything that the Diamond personnel or supervisor told him to do.
Diamond was engaged in the manufacture of egg cartons and owned a huge warehouse wherein bales of paper had been stored to be used in that manufacturing process. A fire had started in the paper bales and was smoldering. May's work consisted of using the arm of the backhoe to pull down paper bales that were stacked on top of each other. They were then removed from the building by other workmen. Some employees had hoses in the warehouse and water was sprayed on the smoldering bales in order to control the fire. Other companies had sent men to Diamond for the purpose of helping in the operation, and Diamond's own employees were on the scene. As the paper bales were pulled down, flames would leap six to seven feet upward as oxygen got to the fire. An emergency situation existed and there was a certain amount of danger involved.
May said that J.W. Christian Construction Co. had been hired by Diamond to come in and remove some of the burning bales and that they hired his machine. When May unloaded the machine, he said that one of the supervisors asked him to *834 start pushing burning bales in one pile and bales that weren't burning into another pile. He used the front-end loader of the backhoe to do that.
At the outset on Thursday, May 22, 1975, May was using the front-end loader rather than the backhoe. He continued that work until approximately 7:30 Friday morning, May 23, when another operator for J.W. Christian Construction Co. relieved him and he went home for rest. He returned to the job at approximately 2 p.m. Friday afternoon, and the relief operator was pulling down bales with the backhoe, using the back boom and claw on it. He did not indicate that he was having trouble with the machine. May began to have trouble with the backhoe in that the lever which controlled the bucket and arm failed to work properly. However, he continued to operate it until 4:30 or 5 p.m. on Friday, May 23, then shut it down because he felt that it was not safe to the men working around it, although he didn't consider it unsafe for himself.
May telephoned Christian about the trouble and a mechanic from Case was sent to the Diamond premises for the purpose of repairing the backhoe. May told the mechanic that the problem was in the cylinder which controlled the boom up and down, and he helped the mechanic move and replace bolts on the covers of the hydraulic system. The mechanic removed the lever, took out the cylinder, washed it, inspected it and said it needed a new cylinder. The new part would have to be ordered and it would not arrive until two days later.
The mechanic worked on the machine until 6:30 or 7 p.m., and completed all the repairs he could. May put the machine back into operation. About 8 p.m., he began having the same trouble as earlier, but continued to operate the machine by hitting the lever with his hand and kicking it with his boot. He did not call J.W. Christian or anyone else about the condition of the machine. About 2 a.m., May shut down the machine and intended to go home, having worked twelve hours since 2 p.m. He said the supervisor asked him why he stopped the machine, and May told him that it was dangerous for the personnel around it, that he felt he could operate it safely for himself; and that he knew it was in an unsafe condition. The supervisor explained that if the bales were not taken down, the whole plant would burn, and May said:
He asked me if I would come up and get an opening in the back of the building so they could get their forklifts and loaders in there to start bringing bales out. He asked me to remove a few more feet. He didn't threaten me. He asked if I could just please come up in there and get them a hole in there where they could get the machines out. So I told him I would. I told him I would go in there and get as much as I could out if he would keep his personnel away from the machine. I wasn't sure I could operate it safely with that many men around me manning the fire hose. With my experience with all types of equipment and in all conditions, I felt I could still operate it safely for myself. But when a supervisor is asking you if you could possibly keep the machine working without endangering your own life, you try to do it. I undertook this hazard knowing the hazard. I believe any other man would have done the same. I got back on and cranked it up knowing I was going to have the same problems with the boom. I wouldn't have done it unless I felt I could do it safely.
May continued to operate the machine in its defective condition for approximately one to one and one-half hours until approximately 4 a.m. He was standing in the cab and attempted to kick the lever, but failed to get it out of neutral. The boom continued to operate, he tried to kick it again, the boom was going down and to his right, and struck the concrete floor. The machine tilted up and threw May off it onto the floor, where he was seriously injured.
The declaration in this cause simply charged as a cause of action that Diamond owed to appellee the duty to provide him a reasonably safe place to work and to provide him reasonably safe conditions within *835 which to work; that Diamond negligently and carelessly breached said duties in that it failed to provide appellee a reasonably safe place to work and reasonably safe conditions within which to do his work; and that said acts and omission and breaches of duty as well as defects in the backhoe proximately caused the injuries of appellee.
The evidence is undisputed that J.W. Christian Construction Co. was an independent contractor; that it had contracted with Diamond to do a job in the Diamond warehouse, e.g., pull down stacked bales of paper which were smoldering and burning and remove them from the warehouse; that J.W. Christian Construction Company sent its employee and backhoe operator, Robert T. May, to the warehouse with the backhoe machine, owned by J.W. Christian Construction Company; that Robert T. May was a skilled backhoe operator with thirty years' experience in heavy machines; that May knew the condition of the machine and that he operated it in that defective condition for approximately eight hours.
In Jackson Ready-Mix Concrete v. Sexton, 235 So.2d 267 (Miss. 1970), Sexton was a licensed electrician and independent electrical contractor. His experience in that specialized field extended over a period of thirty years at the time of his injury. He operated his own establishment, with his own tools, appliances, truck and safety devices and employed his own assistants or helpers. He held himself out to the public as a skilled and experienced electrician. He was making a private installation on the property of Jackson Ready-Mix Concrete when his elbow came in contact with an uninsulated electrical object, he was shocked, and fell from a pole to the ground, sustaining severe injuries. Sexton was a business invitee of Ready-Mix. Quoting from 65 C.J.S. Negligence § 63 (1966), the Court said:
"The duty toward an invitee does not extend to looking out for or preventing wrongful acts or disorderly conduct of the invitee, which may result in injury to him, or to prevent a careless person from injuring himself. (Id. § 63(45)).
* * * * * *
[W]here the invitee knows of the danger or is chargeable with knowledge thereof, even a warning is not required, * * *. (Id. § 63(46)).
* * * * * *
The basis of the inviter's liability for injuries sustained by the invitee on the premises rests on the owner's superior knowledge of the danger, and, as a general rule, he is not liable for an injury to an invitee resulting from a danger which was known to the invitee or which was obvious or should have been observed by the invitee in the exercise of reasonable care, or from a condition which was as well known or as obvious to the invitee as to the inviter, or from a danger which the invitee should reasonable have appreciated before exposing himself to it, or which the inviter had no reason to believe would not be discovered by the invitee. It has been held that liability cannot be based on a condition of the premises which is incidental to the business being carried on there and to be expected by an invitee.
There is no duty to warn the invitee of a defect or danger which is known to him or which is as well-known to the invitee as to the owner or occupant, or which is obvious or which should be observed by the invitee in the exercise of ordinary care. (Id. § 63(53))." [235 So.2d at 269-70].
The principle is well recognized that the owner of premises is not liable to an independent contractor (business invitee) for obvious defects of the premises or machinery, but only those hidden or latent defects which are known to the owner, but not to the independent contractor. In United Roofing and Siding Company v. Seefeld, 222 So.2d 406 (Miss. 1969), quoting from 41 Am.Jur.2d Independent Contractors § 28, at 785 (1968), the Court said:
"As an exception to the general rule requiring the owner or occupier of premises (the contractee) to furnish a safe *836 place of work to an independent contractor and the latter's employees, the owner or occupier is under no duty to protect them against risks arising from or intimately connected with defects of the premises, or of machinery or appliances located thereon, which the contractor has undertaken to repair. Closely related to this exception is the rule that the owner is not liable for death or injury of an independent contractor or one of his employees resulting from dangers which the contractor, as an expert, has known, or as to which he and his employees `assumed the risk.'" [222 So.2d at 408].
See also Fortenberry Drilling Co., Inc. v. Mathis, 391 So.2d 105 (Miss. 1980); Buford v. Jitney Jungle Stores of America, Inc., 388 So.2d 146 (Miss. 1980); and General Tire & Rubber Co. v. Darnell, 221 So.2d 104 (Miss. 1969).
Although the declaration does not so charge, the appellee apparently now takes the position that he was required to resume operation of the backhoe by a supervisor of Diamond. It is true that J.W. Christian instructed May to take the machine to the Diamond premises to do anything that the personnel or the supervisor told him to do. However, May stated the reason he resumed operation of the backhoe a short time before he was injured was because "He [supervisor] asked me to remove a few more feet. He didn't threaten me. He asked if I could just please come up in there and get them a hole in there where they could get the machines out. So I told him I would."
We hold that, under the pleadings and the facts of this case, Diamond was not liable for the accident, and injuries sustained by May, and that the lower court erred in refusing to grant a peremptory instruction in favor of Diamond.
Likewise, in the cross-appeal relating to Case, the mechanic from Case removed the levers and cylinder, inspected and cleaned the cylinder and found that a new cylinder should be installed. He told May that he did not have a replacement part in inventory, and that a new part would have to be ordered which would require approximately two days. The mechanic installed the existing part with full knowledge of May, who operated the machine without difficulty for approximately one hour. When the same trouble developed again, being fully aware of the defective condition of the backhoe, May continued to operate the machine.
We are of the opinion that there was no liability on Case and the lower court correctly granted a peremptory instruction in favor of Case.
The judgment of the lower court is reversed and rendered as to Diamond on direct appeal and is affirmed as to Case on cross-appeal.
REVERSED AND RENDERED ON DIRECT APPEAL; AFFIRMED ON CROSS-APPEAL.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and BOWLING, HAWKINS, PRATHER and ROBERTSON, JJ., concur.
DAN M. LEE, J., not participating.
NOTES
[1] May was injured on the job May 24, 1975. He died of cancer unrelated to the injuries on January 19, 1980, and this suit, which was pending, was revived in the name of Hazel O. May, Administratrix of the Estate of Robert T. May, Deceased.