**REVISED**
**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**
**No. 95-60668**

**ANDRES HILL, ET AL.,**

Plaintiffs,

**ANDRES HILL,**

Plaintiff-Appellee-Cross-Appellant,

versus

**INTERNATIONAL PAPER COMPANY,**

Defendant-Appellant-Cross-Appellee.

_____

**Appeals from the United States District Court
for the Southern District of Mississippi**

_____

August 21, 1997

Before HIGGINBOTHAM, DAVIS, and BARKSDALE, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

Primarily at issue is the duty owed, under Mississippi law, by a premises owner to an independent contractor for a dangerous condition on the premises. Plaintiff-appellee Andres Hill contends that the duty, in regards to *all* invitees, is singular: to maintain reasonably safe premises. Based on this theory, as enunciated in *Tharp v. Bunge Corp.*, 641 So. 2d 20 (Miss. 1994) (en banc), a jury rendered a verdict for Hill in the amount of $1.5 million against International Paper for negligence. Post-verdict, International

Paper moved for, *inter alia*, judgment as a matter of law and remittitur. In part pursuant to **Tharp**, the district court denied the motion for judgment or new trial. It did reduce the award, however, to approximately $850,000. In the light of the quite recent decision of the Mississippi Supreme Court in **Jones v. James Reeves Contractors, Inc.**, No. 93-CA-01139-SCT, 1997 WL 137395 (Miss. March 27, 1997) (en banc), we are compelled to **VACATE** the judgment and **REMAND** for further proceedings, including a new trial if Hill can present triable issues.

## I.

International Paper (IP) operates a paper mill at Moss Point, Mississippi. BE&K Construction Company operates nationally at paper mills, among other sites; and, since July 1989, it has performed repair and maintenance services at the Moss Point mill under a long-term contract with IP. BE&K maintains a large and continuing presence there — between 50 to 700 employees, depending on the work being conducted.

In the contract, BE&K represented that it was "familiar with the conditions existing on the site at which the work will be performed and affirms that there have been no representations by [IP] beyond those set forth in this Agreement". In addition, BE&K agreed to "keep the area in which [it], its employees and agents are working in a safe and reasonably clean condition during the performance of the work". Finally, it agreed "to provide all supervision, labor, equipment and tools" necessary to perform work at the mill and to "furnish its best skill and judgment in the

performance of its obligations ... performing all work ... in a safe, good and first class workmanlike manner".

In the mill's sheet finishing room, large rolls of paper are cut into sheets by cutter machines.  Because the rolls weigh several thousand pounds, they are moved into place at the machines via floor trolleys — flat steel plates on metal wheels that slide along tracks built into the floor.  There are ten trolleys in the sheet finishing room; each weighs approximately 128 pounds, measures 36 inches by 12 inches, and sits approximately 5/8 inches above the floor.  Each trolley track is approximately 16 feet long.  The trolleys and tracks are painted yellow; the surrounding floor, green.

In February 1992, there were approximately 130 BE&K employees on site.  One was Andres Hill, a structural welder. Along with other BE&K employees, he was working in the sheet finishing room, upgrading metal structures on the paper cutting machines.

Hill and the rest of the BE&K crew worked a night shift, shutting down IP's production while they fabricated metal in an area separate from the sheet finishing room, then welded it to the paper cutters in that room.  While carrying several items and walking through the sheet finishing room, Hill stepped on a trolley, fell, and was injured.

Hill claimed negligence by IP in the "location, placement, use and condition of the floor trolley". Summary judgment was denied IP; at trial in early 1995, it moved unsuccessfully for judgment as a matter of law at the close of Hill's case-in-chief and at the

close of all the evidence. In denying these motions, the district court relied in part on **Tharp**. In addition, the court gave instructions to the jury that tracked a premises owner's duty as **Tharp** appeared to define it. The jury found Hill 40%, and IP 60%, at fault, and awarded Hill $1.5 million in damages.

IP moved for judgment as a matter of law, a new trial, or remittitur. Although the motion for judgment or for new trial was denied — again, in part pursuant to **Tharp** — the court found the damages excessive and conditionally remitted them. Upon Hill's acceptance of the remittitur, an amended judgment was entered for approximately $850,000. Thus, Hill's total recovery, reduced by his 40% negligence, was approximately $500,000.

## II.

IP presents three issues: that it was entitled to judgment as a matter of law because it satisfied its duty as a premises owner to an independent contractor and its employee, Hill; similarly, that the jury instructions misstated this element of Mississippi premises liability law; and, finally, that Hill's damages, even post-remittitur, are excessive. Hill cross-appeals, claiming error in the exclusion of certain evidence concerning liability. Because of our disposition of the district court's denial of IP's motion for judgment, we need not address the other issues presented.

For this diversity action, we, of course, apply Mississippi substantive law. **Erie R.R. Co. v. Tompkins,** 304 U.S. 64 (1938). The interplay between **Tharp** and **Jones** makes our task most challenging; indeed, quite "**Erie**".

- 4 -

And, we review *de novo* the denial of judgment as a matter of law, according to the same standards used by the district court. *E.g.*, **Conkling v. Turner**, 18 F.3d 1285, 1300-01 (5th Cir. 1994). Such judgment is appropriate if, after viewing the trial record in the light most favorable to the non-movant, there is no "legally sufficient evidentiary basis" for a reasonable jury to have found for the prevailing party. **Id.** (quoting FED. R. CIV. P. 50(a)); *see also* **Boeing Co. v. Shipman**, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc).

## A.

The primary question before us is the duty owed by a Mississippi premises owner to an independent contractor. It springs from some inconsistency in Mississippi case law, at least as we read it, in defining that duty. *Compare* **Jackson Ready-Mix Concrete v. Sexton**, 235 So. 2d 267, 269 (Miss. 1970) ("no duty to protect [an independent contractor] against risks arising from or intimately connected with defects of the premises, or of machinery or appliances located thereon, which the contractor has undertaken to repair") (quoting 41 AM. JUR. 2d *Independent Contractors* § 28 (1968)), *with* **Ingalls Shipbuilding Corp. v. McDougald**, 228 So. 2d 365, 367 (Miss. 1969) ("duty ... to turn over ... a reasonably safe place to work or to give warning of danger"), *and* **General Tire & Rubber Co. v. Darnell**, 221 So. 2d 104, 107 (Miss. 1969) ("duty to exercise ... ordinary care to keep the premises in a reasonably safe condition").

## 1.

Adding to the mix are the two earlier-referenced decisions by the Mississippi Supreme Court: *Tharp v. Bunge Corp.*, 641 So. 2d 20, 22, 25 (Miss. 1994) (en banc), which appeared to abolish the "open and obvious" bar to liability in *all* premises liability cases; and *Jones v. James Reeves Contractors, Inc.*, No. 93-CA-01139-SCT, 1997 WL 137395 (Miss. Mar. 27, 1997), which appears to have resurrected that bar, at least where independent contractors are concerned. *Jones* was decided not only after the trial and post-judgment motions, but also after the initial briefing and argument of this appeal. In the new light of *Jones*, we called for supplemental briefs. Although the position of the Mississippi Supreme Court on this issue is not entirely clear, at least to us, our best "*Erie*-guess" is that *Jones* did effect a change in *Tharp*. As hereinafter discussed, given the district court's strong (and understandable) adherence to the *Tharp* rule throughout the trial, and in fairness to it and the parties, we must vacate and remand for further proceedings, to possibly include a new trial. To assist the district court on remand, and in the interest of judicial economy, our interpretation of *Jones*' effect on *Tharp* follows.

### 2.

Mississippi followed the traditional rule that an owner owed an invitee the duty to use "ordinary care to have his premises in a reasonably safe condition for use in a manner consistent with the purposes of the invitation". *Mississippi Winn-Dixie Supermarkets v. Hughes*, 156 So. 2d 734, 735 (Miss. 1963); *see also Caruso v. Picayune Pizza Hut, Inc.*, 598 So. 2d 770, 773 (Miss. 1992);

- 6 -

*McGovern v. Scarborough*, 566 So. 2d 1225, 1228 (Miss. 1990); *Lucas v. Buddy Jones Ford Lincoln Mercury, Inc.*, 518 So. 2d 646, 648 (Miss. 1988); *Mercy Reg'l Med. Ctr. v. Doiron*, 348 So. 2d 243, 245 (Miss. 1977); *General Tire & Rubber*, 221 So. 2d at 107; *First Nat'l Bank of Vicksburg v. Cutrer*, 214 So. 2d 465, 466 (Miss. 1968); *Stanley v. Morgan & Lindsey, Inc.*, 203 So. 2d 473, 475-76 (Miss. 1967). As the Mississippi Supreme Court explained 30 years ago, "[T]his is the general rule throughout the United States ... and it is also the rule in this state." *Stanley*, 203 So. 2d at 475.

Needless to say, the key to reasonable safety was foreseeability of harm. As the Mississippi Supreme Court noted almost 60 years ago, "Requisite care remains always that degree of care commensurate with *appreciable* danger appraised in terms of ordinary prudence and interpreted in the light of the attendant circumstances." *Supreme Instruments Corp. v. Lehr*, 1 So. 2d 242, 244 (Miss. 1941) (emphasis added).

In other words, whether premises were reasonably safe depended on whether the owner could reasonably anticipate that an injury would occur on his property. *See Stanley*, 203 So. 2d at 476 ("not required to anticipate an unusual and improbable result"). Although this question was usually for the jury, *see Caruso*, 598 So. 2d at 773; *Supreme Instruments*, 1 So. 2d at 246, some premises (conditions) were of such a nature that reasonable minds could not differ that an injury was unforeseeable; therefore, as a matter of law, the premises were reasonably safe. *See McGovern*, 566 So. 2d at 1228 (raised threshold in doorway); *Kroger, Inc. v. Ware*, 512

So. 2d 1281, 1282 (Miss. 1987) (orange parking curb in parking lot); *Mercy Reg'l Med. Ctr.*, 348 So. 2d at 246 (flight of steps with no handrail); *General Tire & Rubber*, 221 So. 2d at 107 (failure to show that owner maintained elevator in "such a defective condition that it could reasonably foresee that some injury would probably result from its use").

For *latent* dangers, a number of pre-*Tharp* cases contain language suggesting that, as urged by IP, the duty owed an invitee is disjunctive; that is, either provide reasonably safe premises *or* warn of those latent dangers. *See* *Ware*, 512 So. 2d at 1282 ("exercise ordinary care, keeping the premises in a reasonably safe condition or warning of dangerous conditions not readily apparent"); *see also* *Wilson v. Allday*, 487 So. 2d 793, 798 (Miss. 1986); *Buford v. Jitney Jungle Stores of America, Inc.*, 388 So. 2d 146, 149 (Miss. 1980); *Downs v. Corder*, 377 So. 2d 603, 605 (Miss. 1979); *Mississippi Chem. Corp. v. Rogers*, 368 So. 2d 220, 222 (Miss. 1979); *Mississippi Power Co. v. Brooks*, 309 So. 2d 863, 866 (Miss. 1975); *Braswell v. Economy Supply Co.*, 281 So. 2d 669, 677 (Miss. 1973); *McDougald*, 228 So. 2d at 367; *Nowell v. Harris*, 68 So. 2d 464, 467 (Miss. 1953). In fact, some of the cases that state the duty in the singular also contain this "alternative" formulation. *See* *Mercy Reg'l Med. Ctr.,* 348 So. 2d at 245; *Stanley*, 203 So. 2d at 476; *Hughes*, 156 So. 2d at 735-36.

In the light of *Tharp*, these cases appeared to hold that a duty to warn arose if, despite his efforts, an owner could not make the premises reasonably safe. Therefore, an owner did not have an

- 8 -

"either-or" choice between, on the one hand, providing reasonably safe premises and, on the other, warning of dangers. Rather, he first had a duty to remove or alleviate the danger; *if* that could not be achieved with reasonable efforts, *then* a warning of the latent defect was required.

To begin with, we have found only two cases that actually described a landowner's duty as "alternative". **Buford**, 388 So. 2d at 149 ("alternative duty of (a) providing a reasonably safe place to work or (b) giving warning") (quoting **McDougald**, 228 So. 2d at 367). In addition, some of the cases characterize the duty in such a way as to imply that warnings come into play as a premises owner's last resort: "[A]n owner ... owes ... a duty to use ordinary care to have his premises in a reasonably safe condition ... or *at least* not to lead them into a dangerous trap or to expose them to an *unreasonable risk*, but to give them adequate and timely notice and warning of latent [dangers]...." **Nowell**, 68 So. 2d at 467 (quoting 38 Am. Jur. § 96) (emphasis added); *see also* **Mercy Reg'l Med. Ctr.**, 348 So. 2d at 245; **Braswell**, 281 So. 2d at 677; **Stanley**, 203 So. 2d at 476.

In other words, if an owner could not satisfy his duty of providing reasonably safe premises by eliminating all foreseeable risks, he had to "at least" warn of latent dangers so as not to let invitees be injured on dangerous conditions the owner should have corrected, or made reasonable efforts to correct, in the first place. However, other cases state the duty in the alternative without this "at least" language. *See* **Wilson**, 487 So. 2d at 798;

- 9 -

*Downs*, 377 So. 2d at 605; *Rogers*, 368 So. 2d at 222; *Brooks*, 309 So. 2d at 866; *McDougald,* 228 So. 2d at 367.

But, the more recent pre-*Tharp* cases made clear that the duty to warn was not an independent choice for premises owners; instead, it was a "corresponding duty" to the duty to make premises reasonably safe. *Brooks*, 309 So. 2d at 867. These cases stated the duty as follows:

> [T]he owner of premises: (1) is not an insurer of the invitee's safety, (2) has only a duty to keep the premises reasonably safe, and (3) *when not reasonably safe* to warn only where there is hidden danger or peril that is not in plain and open view.

*Caruso*, 598 So. 2d at 773 (emphasis added); *see also McGovern*, 566 So. 2d at 1228. Therefore, an owner had to make reasonable, affirmative efforts to eliminate or alleviate the danger — to make the premises reasonably safe. *See Millers of Jackson, Meadowbrook Rd., Inc. v. Newell*, 341 So. 2d 101, 103 (Miss. 1976) ("[O]ur law requires that [a landowner] must remove those hazards of which he has actual or constructive notice"); *see also McDougald*, 228 So. 2d at 367. Only when conditions could not be corrected or removed to make the premises reasonably safe did a duty to warn arise.

Pre-*Tharp*, however, the failure to satisfy any part of the duty (as described above) did not lead automatically to the owner being liable. The "open and obvious" bar provided that, if a dangerous condition was in plain view and clearly apparent to an invitee, the owner was not liable for injuries caused by the condition. *See Diamond Int'l Corp. v. May*, 445 So. 2d 832, 835-36 (Miss. 1984); *Buford*, 388 So. 2d at 149-50; *Jackson Ready-Mix*

- 10 -

*Concrete*, 235 So. 2d at 271-72; *United Roofing and Siding Co. v. Seefeld*, 222 So. 2d 406, 407-08 (Miss. 1969); *Stanley*, 203 So. 2d at 476.

This rule was not an application of common-law contributory negligence; by statute, Mississippi has been a pure comparative fault state since 1910. *See* MISS. CODE ANN. § 11-7-15 (1972). Rather, the "open and obvious" bar was a form of common-law assumption of risk: when a plaintiff voluntarily and knowingly engages in a particular activity despite risks involved, a defendant owes that plaintiff no duty of care with respect to those risks. *See* W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS, § 68, at 480-81 (5th ed. 1984). Restated, pursuant to contributory negligence, where the defendant *is* negligent, the plaintiff's negligence bars his recovery; however, when a plaintiff "assumes the risk", a defendant is simply "not negligent" because he owes no duty. *See* *id.* § 65, at 451-52, § 68, at 480-81.

In the premises liability context, with respect to open and obvious conditions, the owner owed an invitee no duty — to make reasonably safe, remove, or warn. Although Mississippi did not unconditionally equate the open and obvious bar with assumption of the risk, both defenses are essentially grounded on the "no duty" principle. *See* *Jackson Ready-Mix Concrete*, 235 So. 2d at 270; *United Roofing and Siding*, 222 So. 2d at 408.

Prior to *Tharp*, all this law was the same for independent contractors as for other invitees. An owner had a duty to make his premises reasonably safe for an independent contractor. *See* *United*

***Roofing and Siding***, 222 So. 2d at 408; ***General Tire & Rubber***, 221 So. 2d at 107.  That duty included taking affirmative efforts to ensure safety; an owner could not simply rely on warnings to satisfy his duty.  *See **McDougald***, 228 So. 2d at 367.  (Although some cases involving independent contractors contained language suggesting that the duty was "alternative", we read those cases in the same light as we did *supra* (*i.e.*, that the duty *is not* alternative), especially in the light of ***Tharp***.)  But, there was no duty to warn an independent contractor against "open and obvious" conditions.  *See **Diamond Int'l***, 445 So. 2d at 835; ***Buford***, 388 So. 2d at 149-50; ***Jackson Ready-Mix Concrete***, 235 So. 2d at 270; ***United Roofing and Siding***, 222 So. 2d at 407-08; ***General Tire & Rubber***, 221 So. 2d at 107.

There were, however, two exceptions to a premises owner's duty with regard to independent contractors.  First, there was no duty to "protect [a contractor] against risks arising from or intimately connected with defects of the premises, or of machinery or appliances located thereon, which the contractor has undertaken to repair".  ***United Roofing and Siding***, 222 So. 2d at 408 (quoting 41 AM. JUR. 2D *Independent Contractors* § 28); *see **Diamond Int'l***, 445 So. 2d at 835-36; ***Downs***, 377 So. 2d at 605; ***Jackson Ready-Mix Concrete***, 235 So. 2d at 271.

And second, the owner was "not liable for death or injury of an independent contractor or one of his employees resulting from dangers which the contractor, as an expert, has known, or as to which he and his employees 'assumed the risk'".  ***United Roofing and***

*Siding*, 222 So. 2d at 408 (quoting 41 AM. JUR. 2D *Independent Contractors* § 28); *see* **Diamond Int'l Corp.**, 445 So. 2d at 836; **Jackson Ready-Mix Concrete**, 235 So. 2d at 271. In this context, we read "has known" not to mean a warning by the owner but rather knowledge of the hazards inherent in the work being performed by the independent contractor. *E.g.*, **Jackson Ready-Mix Concrete**, 235 So. 2d at 271-72 (holding that electrician injured by uninsulated wire while installing electric line on utility pole had "assumed the risk"). This exception was described as "[c]losely related" to the "intimately connected" exception, *see* **United Roofing and Siding**, 222 So. 2d at 408 (quoting 41 AM. JUR. 2D *Independent Contractors* § 28).

In **Tharp**, the en banc Mississippi Supreme Court, in a five-four split, effected a most dramatic change in Mississippi premises liability law by abolishing the "open and obvious" bar, applying instead "true comparative negligence". **Tharp**, 641 So. 2d at 25. As a result, a premises owner can no longer claim to have no duty with respect to open and obvious conditions. *Id.* at 24. Instead, he must take affirmative steps to alleviate or eliminate the dangers, even if they are clearly visible to an invitee. *Id.* at 25. As **Tharp** explained, "The party in the best position to eliminate a dangerous condition should be burdened with that responsibility. If a dangerous condition is obvious to the plaintiff, then surely it is obvious to the defendant as well. The defendant, accordingly, should alleviate the danger." *Id.* In sum, **Tharp** reaffirms the duty under Mississippi law to remove or

alleviate dangerous conditions that made premises not reasonably safe. It also extends that duty to apply to all such conditions, latent and patent.

*Tharp* therefore appeared to make it impossible to rely on invitee knowledge of a dangerous condition in assessing an owner's foreseeability of harm (*i.e.*, whether premises were "reasonably safe"). Invitee knowledge (actual or constructive) would simply be another way of saying that the condition was (or should have been) "open and obvious" to the invitee. *Tharp* makes that knowledge relevant in assessing the negligence *vel non* of the *invitee*, *not that of the owner*. Making that knowledge a factor in determining the negligence of the owner would simply be bringing the "open and obvious" defense back into Mississippi law through the back door.

More importantly, the *Tharp* rule appeared to apply in *all* premises liability cases, including those involving independent contractors. As discussed *supra*, the open and obvious bar applied equally to all invitees. *Tharp*'s abolition of that bar therefore logically applied, for example, to independent contractors. The Mississippi Supreme Court gave no indication that it intended to limit its holding to a particular type of invitee. *Id.* at 22 ("Through our inherent powers we hereby abolish the so-called 'open and obvious' defense to negligence actions.").

The facts of *Tharp* reinforced this conclusion. The plaintiff in *Tharp* was an inspector with the Mississippi Department of Agriculture, sampling grain to be shipped in order to certify its quality for the buyer. *Id.* As such, he was not an invitee with no

- 14 -

expertise, such as a customer in a store. *See* **Hardy v. K Mart Corp**., 669 So. 2d 34, 36 (Miss. 1996); **Tate v. Southern Jitney Jungle Co.**, 650 So. 2d 1347, 1348 (Miss. 1995). On the other hand, because **Tharp** addressed the "open and obvious" bar, and not the two above-described exceptions for independent contractors, it probably left those exceptions intact. **Jones** settles the issue; it is not necessary for us to determine whether **Tharp** abolished these exceptions. **Jones** either scaled back or clarified the rule in **Tharp**, by carving out an exception for independent contractors. A detailed discussion of **Jones** is in order.

In **Jones**, the premises lessee (Howard Industries) was expanding its plant. **Jones**, 1997 WL 137395, at *1. McCaskill Brothers Plumbing Co. was the contractor for, among other things, the plumbing work, including installation of a sewer lift station. *Id.* The lift station required excavating a hole approximately 15 feet deep. *Id.* Because McCaskill's supervisor noticed water in the soil, he had a system installed to "dewater" the soil prior to the excavation. *Id.*

McCaskill then contracted with James Reeves Contractor, Inc., for equipment and an operator to excavate the hole. *Id.* at *2. Reeves testified that, while digging, he discovered a subsurface flowing stratum of "watersand", a very dangerous condition, and that he notified McCaskill's supervisor; the supervisor denied having the conversation. *Id.* Soon after, three McCaskill employees were killed when the walls of the excavation caved in. *Id.*

- 15 -

A wrongful death action was brought against Howard, James Reeves, and the project architects. *Id.* at *1. The trial court awarded summary judgment to the defendants. *Id.* It held, *inter alia*, that Howard, the premises lessee, breached no duty to the workers. *Id.* The Mississippi Supreme Court affirmed. In regard to Howard, the court gave three independently viable reasons for its holding.

The first basis, which is not relevant to the issue at hand, concerned the fact that Jones County, Mississippi, "owned the site and was responsible for constructing the building. Howard[, the premises lessee,] was the authorized agent of Jones County for the purpose of completing the construction project." *Id*. The Mississippi Supreme Court agreed with the trial court that, under this scenario, Howard had no liability for accidents occurring on the premises. *Id.* at *9.

Next, the court stated that, "even if this avenue of recovery were not closed", Howard would still not be liable. *Id.* at *10. Citing *Jackson Ready-Mix Concrete*, 235 So. 2d at 270, and seeming, without saying so, to retreat from *Tharp*, the court stated: "The owner/occupier is not an insurer of the invitee's safety, and *he* is not liable for injuries [arising out of conditions] which are not dangerous *or which are, or should be[,] known to the business invitee*." *Id*. at *10 (emphasis added).

Therefore, for a second no-liability basis, and under the "intimately connected" exception for independent contractors, discussed *supra*, the court held that Howard did not owe McCaskill's

- 16 -

employees any duty with respect to "defects of the premises ... which the contractor has undertaken to repair". *Id.* (quoting *Jackson Ready-Mix Concrete*, 235 So. 2d at 271). The court noted that, arguably, McCaskill's installation of the dewatering system was a repair mechanism necessary for excavation of the hole (which in turn was necessary for installation of the lift station, the work for which Howard hired McCaskill), bringing the case "squarely within" this exception. *Id.*

Along this line, the *Jones* plaintiffs countered that McCaskill was on site to perform contract plumbing work, *not* to repair a defect in the soil, meaning that the risks arising from the "watersand" *were not intimately connected* with the work for which McCaskill was hired. To deal with this alternative interpretation, the Mississippi Supreme Court invoked a variation of the "intimately connected" exception, set forth in *Magee v. Transcontinental Gas Pipe Line Corp.*, 551 So. 2d 182, 185 (Miss. 1989). *Magee* held:

> Where a party ... contracts with another ... to perform original construction or repair work ... and devolves upon the contractor the right and fact of control of the premises and the nature and details of the work, the owner has no liabilities for injuries experienced by the contractor's workers where those injuries arose out of or were intimately connected with the work.

*Id.*

Thus, where the owner surrenders to the contractor *all* control over the performance of that aspect of the work that gives rise to the injury, there is also no liability. *Id.* at 186. Because

- 17 -

McCaskill had, by contract, "unfettered control over that portion of the work which gave rise to the injury" — namely, the excavation of the hole — Howard was "absolved of responsibility". *Jones*, 1997 WL 137395, at *10-11.  As this analysis is simply a variant of the "intimately connected" exception, we take this language to mean that, here too, Howard owed no duty.

Had the court ceased its analysis at this point, we might have concluded that *Jones* does not create an exception to the *Tharp* rule, despite the earlier-referenced language by the *Jones* court from *Jackson Ready-Mix Concrete*, which arguably touches on conditions that are "open and obvious".  As support for such a possible no-exception conclusion, we note, for starters, that the *Jones* plaintiffs contended that the trial court had erroneously based its decision on the "open and obvious" bar.  The Mississippi Supreme Court summarily rejected this contention:

> The plaintiffs correctly note that this Court abandoned the "open and obvious" defense as a complete bar to recovery in premises liability cases in [*Tharp*].  However, ... it is apparent that the words "open and obvious" or any hint that such a defense might have been the basis for the trial court's decision are strictly a figment of the plaintiffs' attorney's imagination.  Accordingly, it is unnecessary to address this point.

*Id.* at *12.

In other words, although *Tharp* was raised in *Jones*, the Mississippi Supreme Court did not find it relevant.  Along this line, we note that the author of the pertinent part of the en banc

*Jones* opinion had joined the dissent in the earlier five-four *Tharp* decision. *See* *id*. at \*9; *Tharp*, 641 So. 2d at 27-29.

In addition, *Tharp*'s abolition of the "open and obvious" bar and the "intimately connected" exception (including its variant in *Magee*) could easily co-exist. Nevertheless, the *Jones* court went on to explain what the duty of Howard *would be* and, in the process, we conclude, carved out an exception to *Tharp*.

As a third basis for its holding, the court noted: "[E]ven if there existed a duty on the part of Howard to make the premises safe [for McCaskill's employees], the only way in which that duty *would remain intact* is if John McCaskill, Jr., as site supervisor, *did not know of the condition of the soil*." *Jones*, 1997 WL 137395 at \*11 (emphasis added). Of course, knowledge by a contractor of a condition is imputed to its employees. *Id.* (citing *City of Jackson v. Ball*, 562 So. 2d 1267, 1270 (Miss. 1990)).

Looking at the record, the court concluded that McCaskill's supervisor had knowledge of the soil condition — possibly actual (from Reeves' warning and from being on site) and certainly constructive (from the contract, in which McCaskill represented that it "has visited the site [and] become familiar with local conditions under which the Work is to be performed"). *Id.* Again citing *Jackson Ready-Mix Concrete*, the court held that, because of McCaskill's supervisor's knowledge of the condition, "Howard had no duty to warn of a danger which McCaskill should reasonably have appreciated before exposing himself (and by extension, his employees) to it." *Id.* In the words of the court, if there was a

duty to make the premises reasonably safe, it no longer "remain[ed] intact". *Id.*

This last rationale for upholding the summary judgment in *Jones* is the most troubling to our interpretation of *Tharp* and other Mississippi cases. *Tharp* appeared to make it impossible to rely on invitee knowledge of a dangerous condition in assessing an owner's negligence. After all, an owner's negligence *vel non* turns on the foreseeability of harm (*i.e.*, whether premises are "reasonably safe"). Invitee knowledge, actual or constructive, would simply be another way of saying that the condition was, or should have been, "open and obvious" to the invitee. Again, *Tharp* seemed to make that knowledge relevant in assessing only the negligence *vel non* of the *invitee*, not that of the owner; making that knowledge a factor in determining the negligence of the owner appears to bring the "open and obvious" bar back into Mississippi law through the back door.

Nevertheless, this seems to be precisely what *Jones* does, at least in the context of independent contractors. As quoted *supra*, *Jones* explicitly states that an independent contractor's knowledge of a defect can absolve the owner of liability:

> The owner/occupier is not an insurer of the invitee's safety, and he is not liable for injuries [arising out of conditions] which are not dangerous or *which are, or should be[,] known to the business invitee*.

*Id.* at *10 (citing *Jackson Ready-Mix Concrete*, 235 So. 2d at 270) (emphasis added).

- 20 -

In this light, a premises owner could defend a negligence action by the employee of an independent contractor by contending, for example, that he warned the independent contractor of a defect. If proven, the independent contractor's knowledge would satisfy the owner's duty. Under IP's formulation of Mississippi law (in its initial brief), this knowledge makes the premises, as a matter of law, "reasonably safe"; it is not foreseeable that a contractor (or its employee) will be injured by a condition of which the contractor has knowledge.

We see little difference, however, between IP's formulation and a contention that, because of the contractor's knowledge, the owner simply had "no duty" with respect to that defect because it was, or should have been, "open and obvious" to the independent contractor. After all, as previously quoted, the Mississippi Supreme Court defined that bar, pre-***Tharp***, as follows: "There is no duty to warn the invitee of a defect or danger ... *which is obvious or which should be observed by the invitee in the exercise of ordinary care.*" ***Jackson Ready-Mix Concrete***, 235 So. 2d at 269-70 (quoting 65 C.J.S. *Negligence* § 63 (1966)) (emphasis added). Translated, this reads: "There is no duty to warn an independent contractor of a defect or danger of which it has *actual knowledge* or of which it, in the exercise of reasonable care, *should have knowledge.*" In ***Jones***, Reeves' possible warning to the contractor's supervisor and the contractor's observations about the work-site during the work are the "actual knowledge", while the contract provision about inspecting the site is the "constructive knowledge"

- 21 -

— in sum, what the contractor should have known, or is deemed to know.

B.

That being said, we apply Mississippi law as best we can to the record before us.  In the light of **Jones**, if an independent contractor has actual or constructive knowledge of a dangerous condition (via warning, contractual provision, etc.), its employees cannot recover against the premises owner for negligence.  Whether this rule is characterized as a type of "open and obvious" bar (a *no* duty rule) or as proof that a warning or knowledge *satisfies* an owner's duty is, for purposes of this opinion, irrelevant.  The owner is not liable.

But, our review of the record convinces us that **Tharp** was a key issue, if not *the* key issue, throughout the trial.  Hill relied on it in opposing IP's summary judgment motion.  It was made an issue of law in the pre-trial order.  The meaning of **Tharp** was contested at trial, particularly in IP's Rule 50 motions and in the district court's rulings on them.  Most importantly, the jury instructions set out a premises owner's duty in the light of **Tharp**: make reasonably safe; take reasonable efforts to remove dangers if not reasonably safe; and if danger cannot be removed, warn invitee. *See* **Tharp**, 641 So. 2d at 25.

In sum, the district court was guided in large part, and properly so, by "the law according to **Tharp**".  In our view, that law has changed — rather dramatically.  Accordingly, in the light

of *Jones*, and based on our review of the record, we are not able to determine whether a reasonable juror could have found for Hill.

In a sense, our inability to make this call is somewhat akin to when we reverse and remand for a new trial because of an erroneous jury instruction that affected the outcome of the case. *See, e.g.*, ***Davis v. Ector County, Tex.***, 40 F.3d 777, 786 (5th Cir. 1994); ***FDIC v. Mijalis***, 15 F.3d 1314, 1318 (5th Cir. 1994). As noted, IP raises an erroneous instruction issue. (Hill counters that the issue was not preserved in district court; IP claims an exception to the usual objection-requirement. We do not address these points.)

However, in our view, the better procedure, on this record and due to what we perceive as a mid-course change in Mississippi law, is the variation we have utilized on judgment as a matter of law. In any event, in fairness to the court and the parties, we must vacate the judgment and remand for further proceedings, including a new trial should Hill be able to present triable issues.

### III.

For the foregoing reasons, the judgment is **VACATED** and the case is **REMANDED** for further proceedings consistent with this opinion.

*VACATED AND REMANDED*