**Chad LAMBERT, Plaintiff,**

v.

**GEORGIA–PACIFIC CORPORATION,
Defendant.**

Civ. A. No. 2:98CV125PG.

United States District Court,
S.D. Mississippi,
Hattiesburg Division.

Jan. 13, 1999.

———

Robert W. Wilkinson, Dogan & Wilkinson, Pascagoula, MS, Michael J. Remondet, Jr., James T. McManus, Jeansonne & Remondet, Lafayette, LA, for Chad Lambert, plaintiff.

Robert P. Myers, Jr., Joe Sam Owen, Owen, Galloway & Clark, Gulfport, MS, Gary A. Bezet, Robert E. Dille, Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, Baton Rouge, LA, for Georgia Pacific Corp., defendant.

### *MEMORANDUM OPINION AND ORDER*

PICKERING, District Judge.

This cause is before this Court on the Motion of Defendant for Summary Judgment. The Court, having reviewed the motions and being otherwise fully advised in the premises, finds as follows, to wit:

### *FACTUAL BACKGROUND*

Georgia Pacific's ("Defendant") plant in the instant case produces container board, which is a material used to make cardboard boxes. For maintenance purposes, Defendant implements a shut down or outage at certain plants twice a year. During the shut down, various contractors are brought in to

perform assorted maintenance functions. In the Spring of 1996, Chad Lambert ("Plaintiff") was employed by Circle S Sandblasting & Insulation Company ("Circle S"). Circle S was one of the independent contracting firms hired to perform maintenance work at Defendant's container board mill in Monticello, Mississippi.

In May of 1992, Defendant entered into a Master Agreement with Circle S to perform industrial maintenance and repair work at Defendant's plant. Circle S is in the business of providing hydro blasting and other industrial maintenance and repair services. Among the projects to be performed by Circle S during the Spring of 1996 was to hydro blast accumulated pulp stock from the walls and ceilings of certain tile chests. During a shut down or outage, maintenance is often performed on large vessels (called "tile chests") that hold pulp stock used to manufacture the container board. On May 1, 1996, during an outage, Plaintiff was hydroblasting in one of Defendant's tile chests, and a large amount of pulp stock fell from the silo's twenty-two (22) foot height ceiling and hit Plaintiff. At the time Plaintiff was hit by the pulp stock, Plaintiff was performing work which Circle S had contracted to perform for Defendant during the Spring 1996 outage.

In the instant case, Plaintiff has sued Defendant for injuries he received on May 1, 1996 while employed by Circle S. However, Defendant contends that it is entitled to Summary Judgment on the basis that Defendant had no duty to protect independent contractors from risks arising from or intimately connected with the work that the independent contractor is hired to perform on the premises. Defendant further contends that it had no duty to warn Circle S or its employees of risks that Circle S was aware. Additionally, Defendant argues that although it had no duty to warn Circle S that the would pulp may fall, it did in fact warn Circle S of that danger. In response, Plaintiff asserts that Defendant is not entitled to Summary Judgment in this case because Defendant violated its own confined space program by its failure to flush out the tile chest prior to entry by the contractor. In addition, Plaintiff contends that Defendant is liable to the plaintiff because Defendant retained an ongoing obligation to follow its own safety program.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corporation v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The mere existence of a disputed factual issue does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis,* 799 F.2d 218, 222 (5th Cir.1986). "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment." *Phillips Oil Co. v. OKC Corp.,* 812 F.2d 265, 272 (5th Cir. 1987).

To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. Once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. National Broadcasting Co., Inc.,* 584 F.2d 111, 114 (5th Cir. 1978). Stated another way, the nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial. *See, e.g.,* Fed.R.Civ.P. 56(e); *Union Planters Nat. Leasing v. Woods,* 687 F.2d 117, 119 (5th Cir.1982).

## LEGAL ANALYSIS

After reading the parties briefs and examining Mississippi case law, it is clear that the Mississippi Supreme Court's recent decision in *Jones v. James Reeves Contractors, Inc.,* 701 So.2d 774, 782 (Miss.1997), is controlling in the instant case. Therefore, a detailed analysis of the *Jones* case is in order.

In *Jones*, the premises lessee (Howard Industries) hired McCaskill Brothers Plumbing Co. to do, among other things, various plumbing work and to complete the installation of a sewer lift station. *Jones*, 701 So.2d at 776. The lift station required excavating a hole approximately fifteen (15) feet deep. *Id.* at 776. Because McCaskill's supervisor noticed water in the soil, he had a system installed to "dewater" the soil prior to the excavation. *Id.* McCaskill then contracted with James Reeves Contractor, Inc., for equipment and an operator to excavate the hole. *Id.* Reeves testified that, while digging, he discovered a subsurface flowing stratum of "watersand", a very dangerous condition, and that he notified McCaskill's supervisor. *Id.* The supervisor denied having the conversation. *Jones*, 701 So.2d at 776. Soon after, three McCaskill employees were killed when the walls of the excavation caved in. *Id.* at 776–77. Consequently, a wrongful death action was brought against Howard, James Reeves, and the project architects. *Id.* The trial court awarded summary judgment to the defendants. *Id.* It held, *inter alia*, that Howard, the premises lessee, breached no duty to the workers. *Id.* The Mississippi Supreme Court affirmed. *Id.*

In affirming the lower Court's holding, the Mississippi Supreme Court conducted an examination of Mississippi law and concluded that Howard was not liable because Jones County, not Howard, was the owner of the construction site. *Jones*, 701 So.2d at 782. But, the Court did not stop there. Instead, the Court offered other justifications for its holding by finding that, "even if this [first] avenue of recovery were not closed", Howard would still not be liable. *Id.* at 782. In so finding, the Court expressed its second basis of non-liability by stating, "The owner/occupier is not an insurer of the invitee's safety, and he is not liable for injuries which are not dangerous or which are, or should be[,] know to the business invitee." *Id.* (citing *Jackson Ready–Mix Concrete v. Sexton*, 235 So.2d 267, 270 (Miss.1970)). The Court also stated that " 'the owner or occupier is under no duty to protect [contractors] against risks of the premises, or of machinery or appliances located thereon, which the contractor has undertaken to repair.' " *Id.* (quoting *Jackson Ready–Mix Concrete*, 235 So.2d at 270).

Then, after the *Jones* plaintiffs countered that McCaskill was on site to perform contract plumbing work and not to repair a defect in the soil, the Mississippi Supreme Court invoked a second, earlier case, *Magee v. Transcontinental Gas Pipe Line Corp.*, 551 So.2d 182, 185 (Miss.1989), which held:

> Where a party ... contracts with another ... to perform original construction or repair work ... and devolves upon the contractor the right and fact of control of the premises and the nature and details of the work, the owner has no liabilities for injuries experienced by the contractor's workers where those injuries arose out of or were intimately connected with the work.

*Magee*, 551 So.2d at 185.

According to the *Jones* Court, *Magee* demonstrates that the critical factor in determining liability is "whether [the occupier] maintains any right of control over the performance of that aspect of the work which gave rise to the injury." *Jones*, 701 So.2d at 782.

The Court in *Jones* concluded by stating that "since McCaskill ... had unfettered control over that portion of the work which gave rise to the injury, the excavation of the hole, Howard is absolved of responsibility under *Magee* as well as Jackson *Ready–Mix Concrete*." *Id.* at 783. Thus, as succinctly stated by the Fifth Circuit Court of Appeals, "where the owner surrenders to the contractor all control over the performance of that aspect of the work that gives rise to the injury, there is ... no liability." *Hill v. International Paper Co.*, 121 F.3d 168, 174 (5th Cir.1997) (citing *Magee*, 551 So.2d at 186).

Plaintiff attempts to distinguish the instant case from *Jones* by pointing out that Defendant, through its written policies, maintains control of its premises and places very exacting burdens on itself through its "Confined Space Program." Plaintiff argues that Defendant did not give "unfettered control" over the premises to Circle S because Defendant placed upon itself an affirmative an ongoing duty to keep its premises safe. However, what Plaintiff fails to understand is that the Court in *Jones* was not concerned with which party had unfettered control over

the work premises. Instead, the *Jones* Court was concerned about whether the independent contractor had "unfettered control over *that portion of the work which gave rise to the injury* ... " *Jones*, 701 So.2d at 783 (emphasis added); *see also Hill v. International Paper Co.*, 121 F.3d 168, 175 (5th Cir.1997) (holding that "where the owner surrenders to the contractor all control over the performance of that aspect of the work that gives rise to the injury, there is ... no liability"). These are two separate issues. For example, almost every business owner exercises some type of control over its premises; however, simply because a business owner exercises control over certain aspects of its surroundings does not automatically lead to the conclusion that an independent contractor does not have unfettered control over that portion of work it has been assigned to perform. It is entirely possible for a business owner to control its premises, and at the same time, for an independent contractor to have unfettered control over the work it is performing on that premises.

In the instant case, Plaintiff has offered no evidence whatsoever that Circle S did not have unfettered control of its work and immediate work surroundings while cleaning the tile chest. To the contrary, the record demonstrates that upon entry to the tile chest Circle S assumed complete and unfettered control over "the performance of that aspect of the work that [gave] rise to the injury, ... " *Jones*, 701 So.2d at 783. The record shows that Circle S supplied all the tools and equipment which it used to hydroblast the tile chests. The record further shows that Defendant exercised no control over the means, methods, techniques, and procedures Circle S used in hydroblasting the tile chests during the Spring 1996 outage. As such, Defendant owed no duty to Plaintiff and is absolved of liability.

Additionally, even if there existed a duty on the part of Defendant to make the premises safe, Plaintiff still may not recover. As a third basis for its ruling in *Jones*, the Mississippi Supreme Court explicitly stated that an independent contractor's knowledge of a defect can absolve the owner of liability. *See Jones*, 701 So.2d at 783. As noted above, according to the Court in *Jones*, "The owner/occupier is not an insurer of the invitee's safety, and he is not liable for injuries [arising out of conditions] which are not dangerous or which are, or should be[,] known to the business invitee." *Id.* at 783. Therefore, "[i]n the light of Jones, if an independent contractor has actual or constructive knowledge of a dangerous condition ... its employees cannot recover against the premises owner for negligence." *Hill v. International Paper Co.*, 121 F.3d 168, 176 (5th Cir.1997). In other words, if a duty actually did exist, the only way in which Defendant's duty would remain intact is if Circle S or Plaintiff did not know of the dangerous condition of the silo. *Jones*, 701 So.2d at 783; *see also City of Jackson v. Ball*, 562 So.2d 1267, 1270 (Miss.1990) (holding that no warning need be given to employees of a contractor so long as the contractor knows of the danger).

In the case *sub judice*, employees of Circle S clearly had knowledge of the dangers associated with their job. Not only were Circle S employees warned by their foreman as to the dangers of falling stock, the record indicates that employees of Georgia Pacific also warned various Circle S employees. Included among the individuals at Circle S with knowledge of this risk was Ken Mayhugh, Circle S's Operations Superintendent who had the overall responsibility for Circle S's work during the Spring 1996 outage. Mr. Mayhugh testified in his deposition that Circle S employees had knowledge of the dangers presented by the falling stock. Mayhugh also testified that Circle S did not encounter any risks in doing this job that they had not known they would encounter. Other Circle S personnel with knowledge of the risk included Circle S's Safety Supervisor for the 1996 Spring outage and Plaintiff's immediate supervisor on the day Plaintiff was injured.

Due to the known danger of falling stock, safety procedures were implemented by Circle S employees in order to minimize the risk that pulp stock may fall on the individual performing the hydro blasting. These procedures included using a fire hose from outside the door of the confined space to knock down any lose stock. Then, once the employees entered the confined area, hydro blasting of the ceilings was done at a forty-five (45)

degree angle to ensure that chunks of stock would fall at a safe distance from the hydroblaster. Such precautionary procedures on the part of Circle S and its employees demonstrate their actual knowledge of the dangers of falling stock. Therefore, since Circle S, as an independent contractor, had actual knowledge of the dangerous condition, its employees cannot recover. *See, Jones,* 701 So.2d at 783; *Hill,* 121 F.3d at 176–77.

This court is *Erie* bound to follow the decisions of the Mississippi Supreme Court in this case. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). This Court is likewise required to apply Mississippi law as interpreted by the Fifth Circuit. In *Jones,* the Mississippi Supreme Court clearly stated that a premises owner is not liable for injuries if the independent contractor who is the employer of the injured party either knew or should have known of the danger. *Jones,* 701 So.2d at 783. The Fifth Circuit pointed out in *Hill* that *Jones* could be a modification of *Tharp v. Bunge Corp.,* 641 So.2d 20 (Miss.1994) (abolishing the "open and obvious" bar to liability in premises liability cases), in cases involving employees of independent contractors. *Hill,* 121 F.3d at 170. However, even though the Mississippi Supreme Court in *Jones* explicitly stated that "open and obvious" is be a bar to an action brought by an employee of an independent contractor, this Court strongly suspects that the Mississippi Supreme Court may later make it clear that the real holding and only application of *Jones* will be in cases in which the injuries of an independent contractor's employee arise out of the very work "which the contractor has undertaken to repair." *Jackson Ready–Mix Concrete,* 235 So.2d at 270.

There are certainly valid public policy reasons why an employer should not be liable for injuries resulting from doing the very work for which the independent contractor was hired. Different policy considerations are implicated if an employee of an independent contractor is injured by a negligent condition caused by the owner, but not associated with the work for which the independent contractor was hired (i.e., if the injury in this case had been caused by a faulty electrical outlet rather than falling pulp stock). In such a situation, this Court believes that the Mississippi Supreme Court may well apply comparative negligence, as it did in *Tharp,* rather than "open and obvious" as a total bar, as it did in *Jones.* This Court suspects that, as Mississippi case law is fleshed out, it is likely that is how the law will develop. But, that is of no help to Plaintiff in this case. Plaintiff was injured while he was performing the very work that his employer had contracted to perform for Defendant. In any event, this Court must follow what the Mississippi Supreme Court has said in the past, not what it may say in the future. Consequently, Plaintiff's claim is barred. Defendant's Motion for Summary Judgment should be granted.

**For the reasons stated above, Defendant's Motion for Summary Judgment against Plaintiff is GRANTED. All other pending motions in this matter are hereby moot. A separate judgment will be entered herein in accordance with Rule 58 of the Federal Rules of Civil Procedure.**

**SO ORDERED AND ADJUDGED.**